**In re PETITION TO INSPECT AND COPY GRAND JURY MATERIALS.**

**No. 81–1–GJ (MIA)–EAG.**

United States District Court,
S.D. Florida.

Dec. 20, 1983.

John Doar, New York City, G. Stewart Webb, Jr., Baltimore, Md., for Committee.

Robert I. Richter, Public Integrity Section, Criminal Div., U.S. Dept. of Justice, Washington, D.C., for Government.

Terence J. Anderson, University of Miami School of Law, Coral Gables, Fla., for Honorable Alcee L. Hastings.

Thomas Julin, Miami, Fla., for The Miami Herald Publishing Co.

## MEMORANDUM OPINION

GORDON, Senior District Judge.*

### I.

### THE ISSUE FOR DECISION

The motion before the Court raises a narrow issue: Whether a Special Investigating Committee appointed under the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980, 28 U.S.C. § 372(c), ("the Act")[1] can gain access to

---

* The Honorable Eugene A. Gordon, Senior United States District Judge for the middle district of North Carolina, sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Pub.L. No. 96–458, § 3, 94 Stat. 2035, 2036–40 (codified at 28 U.S.C. § 372(c) (Supp. V 1981)). This portion of the Act is reprinted in the Appendix accompanying this Opinion. *See also,*

the records and evidence before a grand jury, now discharged, that returned an indictment against an Article III Judge.

### A. The Act

The Act outlines a procedure for the review and resolution of complaints alleging that a judge or magistrate "has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts."[2] Under subsection (c)(3) of the Act, the Chief Judge of the Circuit is required "expeditiously" to review the complaint. In specified circumstances he may dismiss the complaint or "conclude the proceeding."[3] If the Chief Judge determines that such action is not appropriate, subsection (c)(4)(A) requires the Chief Judge to "appoint himself and equal numbers of circuit and district judges of the circuit to a special committee to investigate the facts and allegations contained in the complaint."[4] Following such investigation, the Special Committee is required to file a report with the judicial council of the circuit containing its findings and recommendations.[5] Upon receipt of this report, the council, which is authorized to conduct an additional investigation, is directed to take such action "as is appropriate to assure the effective and expeditious administration of the business of the courts within the circuit, including, but not limited to," actions specifically enumerated in the

Act.[6] The remainder of the Act covers various procedural details.[7]

### B. The Complaint and the Special Committee Petition

On March 17, 1983, a verified written complaint was filed with the Clerk of the United States Court of Appeals for the Eleventh Judicial Circuit pursuant to the Act. The complaint alleged that United States District Judge Alcee L. Hastings had engaged in conduct proscribed by the Act.

On March 29, 1983 the Chief Judge of the United States Court of Appeals for the Eleventh Circuit issued an order pursuant to subsection (c)(4), appointing a Special Committee to investigate the March 17 complaint. Subsection (c)(5) of the Act requires this Committee to "conduct an investigation [of the facts and allegations contained in the complaint] as extensive as it considers necessary."[8] In the performance of this statutory duty, the Committee has petitioned this Court[9] for leave to examine the records, transcripts, minutes, and exhibits of the grand jury that had previously indicted Judge Hastings.[10] The petition is opposed by Judge Hastings[11] who, through counsel, has filed a motion seeking to have the petition dismissed, or in the alternative to have the grand jury ma-

Rules for the United States Court of Appeals for the Eleventh Circuit, Addendum Three. (Hereinafter cited as Eleventh Circuit Rules).

**2.** 28 U.S.C. § 372(c)(1). *See also* Eleventh Circuit Rule 1.

**3.** 28 U.S.C. § 372(c)(3). *See also* Eleventh Circuit Rule 3.

**4.** 28 U.S.C. § 372(c)(4). *See also* Eleventh Circuit Rule 4.

**5.** 28 U.S.C. § 372(c)(5). *See also* Eleventh Circuit Rule 5(a).

**6.** 28 U.S.C. § 372(c)(6)–(c)(8). *See also* Eleventh Circuit Rules 6 and 7.

**7.** 28 U.S.C. § 372(c)(9)–(c)(17). *See also* Eleventh Circuit Rules 8–14.

**8.** 28 U.S.C. § 372(c)(5).

**9.** The grand jury whose records are at issue was empaneled under the supervision of this Court.

**10.** Judge Hastings was acquitted of these charges after trial.

**11.** It is clear that Judge Hastings has standing to object to disclosure. As an individual acquitted of charges brought upon a grand jury indictment, he has a continuing interest in the secrecy of the grand jury materials. *Cf. Douglas Oil Co. v. Petro Stops Northwest,* 441 U.S. 211, 218 n. 8, 99 S.Ct. 1667, 1672 n. 8, 60 L.Ed.2d 156 (1979). *See also, Illinois v. Sarbaugh,* 552 F.2d 768, 772–73 (7th Cir.), *cert. denied,* 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977).

The other party indicted by the grand jury, though notified of these proceedings, has failed to either support or object to the petition.

terial disclosed to the public if the motion to dismiss is denied and disclosure to the Committee is allowed.[12]

## C. Contentions

■ 1. Opposition to the petition is first premised upon the argument that the Act prohibits the Special Committee from applying to this Court to obtain access to the grand jury materials. The Court finds no authority either in the Act or in its legislative history supporting this contention.

The Act evidences Congress' intent to create, within the existing judicial-administrative framework,[13] a procedure to deal fairly, authoritatively, and efficiently with complaints of misconduct or disability made against judges and magistrates. This system, approved in principle by the judiciary,[14] serves to effectuate the public interest in ensuring and preserving an able, honorable, accountable, and independent judiciary. The goals of the Act were to

"improve judicial accountability and ethics, to promote respect for the principle that the appearance of justice is an integral element of this country's justice system, and at the same time, to maintain the independence and autonomy of the judicial branch of government." H.R.Rep. No. 1313, 96th Cong., 2nd Sess. 1 (1980). A review of the legislative history reveals that the focal point of Congressional concern centered on the perceived need for a fair, effective, and efficient way to ensure accountability of powerful life-tenured federal judges to supplement the slow and cumbersome impeachment process.[15] Little guidance can be found on the narrow procedural question before this Court.[16]

Nevertheless, the scant legislative history touching this area suggests that Congress did not intend to restrict the investigatory methods a Special Committee might pursue. Subsection (c)(5) of the Act impos-

---

**12.** Also before the Court is the motion of the Miami Herald Publishing Company to intervene and to allow public access to the grand jury materials. The motion shall be denied. It is clear that the Act prohibits the disclosure requested by the would-be intervenor. *See* § 372(c)(14).

**13.** Congress had previously rejected other proposals that had adopted an adversarial procedure for processing complaints of judicial misconduct or disability. *See, e.g.,* S. 1423, 95th Cong., 1st Sess. (1977) (proposing Court on Judicial Discipline), *reprinted in The Judicial Tenure Act: Hearing on S. 1423 Before the Subcommittee on Improvements in the Judicial Machinery of the Senate Committee on the Judiciary,* 95th Cong., 1st Sess. 3–18 (1977); S. 295, 96th Cong., 1st Sess. (1979) (proposing Court on Judicial Conduct and Disability), *reprinted in Hearings on S. 295, S. 522, S. 678 Before the Subcommittees on Judicial Machinery and Constitution of the Senate Committee on the Judiciary,* 96th Cong., 1st Sess. 127–59 (1979); S. 1873, 96th Cong., 1st Sess. (1979) (proposing Court on Judicial Conduct and Disability), *reprinted in Judicial Tenure and Discipline 1979–80: Hearings Before the Subcommittee on Courts, Liberties and the Administration of Justice of the House Committee on the Judiciary,* 96th Cong., 1st & 2nd Sess. 311–25 (1980).

**14.** *See* Report of the Proceedings of the Judicial Conference of the United States 57 (Sept. 1979); Report of the Judicial Conference of the United States 4–6 (March 1979).

**15.** *See, e.g.,* 126 Cong.Rec. S13859–60 (daily ed. Sept. 30, 1980) (statement of Sen. DeConcini); *Id.* at S13861–65 (statement of Sen. Mathias); *Id.* at H8785 (daily ed. Sept. 15, 1980) (statement of Rep. Kastenmeier); *Id.* at H8787 (statement of Rep. Gudger); *Id.* (statement of Rep. Rodino); 125 Cong.Rec. S15379–80 (daily ed. Oct. 30, 1979) (statement of Sen. DeConcini); *Id.* at S15385–27 (statement of Sen. Thurmond); *Id.* at S15393–97 (statement of Sen. Heflin); *Id.* at S15397–99 (statement of Sen. Bayh); *Id.* at S15412–14 (statement of Sen. Hatch); *Id.* at S15419–21 (statement of Sen. Nunn).

**16.** Though subsection (c)(11) of the Act gives the judicial councils authority to "prescribe ... rules for the conduct of proceedings" under the Act, the rules promulgated by the Judicial Council of the Eleventh Circuit generally reiterate the Act, thus offering little guidance. *See* Eleventh Circuit Rules, *supra* note 1. The rules adopted by the other circuit councils are similarly unenlightening. *But see,* Rules of the Judicial Council of the Third Circuit with respect to Complaints of Judicial Misconduct or Disability (hereinafter cited as Third Circuit Rules). *See generally,* Burbank, *Procedural Rulemaking under the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980,* 131 U.Pa.L. Rev. 283 (1982); Neiser, *The New Federal Judicial Discipline Act: Some Questions Congress Didn't Answer,* 65 Judicature 143 (1981).

es a *duty* upon the Committee to "conduct an investigation as extensive as it considers necessary." [17] Congress assigned and entrusted the duty and responsibility to committees of Federal Judges and intentionally gave them the wide latitude to investigate without limitation as they "consider[ ] necessary." Consistent with the desire to avoid an adversarial-disciplinary procedure, an "inquisitorial-administrative" approach was suggested and adopted for the conduct of such investigation, rather than an adversarial-trial concept. H.R.Rep. No. 1313, *supra* at 14. Subsection (c)(5) was therefore seen to "provide[ ] the special committee with broad flexibility and general authority to investigate the facts and allegations contained in the complaint." *Id.* at 11. Thus, it is for the Committee to "control the objectives and nature of the inquiry." *Id.* at 14.

This Court recognizes the power and right of a Special Committee to petition for access to grand jury material. A contrary construction of the Act would be wholly inconsistent with its broad purposes—to preserve the integrity of the judiciary, to maintain public confidence in the judicial process, to protect the wrongfully accused, and to strengthen judicial independence. These goals are better served by a careful evaluation of the need asserted in the petition, rather than denying the authority of the Committee to initiate the petition in the first instance.[18]

■ 2. Judge Hastings has also challenged the power of this Court to hear and decide this petition. It is concluded that this Court has jurisdiction to hear a petition seeking access to the records of a discharged grand jury convened in its district. As a general rule, "requests for disclosure of grand jury transcripts should be directed to the court that supervised the grand jury's activities." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 226, 99 S.Ct. 1667, 1676, 60 L.Ed.2d 156 (1979). *See also* Fed.R.Crim.P. 6(e)(3)(D). Not only is this Court the only Court with authority and control over the grand jury records, but it also has the responsibility for maintaining the secrecy of the grand jury proceedings. Thus, the Committee, though an arm of the judiciary, had no choice but to petition this Court for access. *Douglas Oil, supra* at 225, 99 S.Ct. at 1676.

■ Subsection (c)(10) of the Act [19] does not prevent this Court from entertaining the petition. That section, properly read, prohibits only judicial review of the Special Committee's findings and recommendation. The Act does not foreclose all resort to the judicial power during the investigatory stage of a Special Committee's duty. Under subsection (c)(9)(A), the Special Committee has the authority to exercise the subpoena power. If, during its investigation, a witness should refuse to obey the command of the subpoena, the Committee certainly would have the authority to invoke the jurisdiction of the appropriate court to seek enforcement of the subpoena. In reaching a decision on enforcement, the Court does not run afoul of subsection (c)(10). In a similar fashion, the Committee can attempt to supplement its investigatory efforts by petitioning for access to grand

**17.** 28 U.S.C. § 372(c)(5).

**18.** In addition, Judge Hastings asserts that the strict confidentiality provisions of the Act prohibit the initiation of this petition as well as its consideration by the Court. *See* 28 U.S.C. § 372(c)(14) and Eleventh Circuit Rule 12. Neither the petition nor this opinion violate the strictures of subsection (c)(14). We deal here solely with legal issues raised in briefs that were of public record. The confidentiality provisions of the Act are properly viewed as an effort to preserve the secrecy of "the facts and allegations contained in the complaint," and the facts and allegations subsequently uncovered during a Committee or Judicial Council investigation. The resolution of this matter was structured to present little risk that factual material would be improperly revealed to the public.

Nevertheless, the Court is troubled by the fact that the file in this action is of public record. Henceforth, the confidentiality requirements of the Act and the Eleventh Circuit Rules should be scrupulously followed. *See* Eleventh Circuit Rule 13.

**19.** *See* 28 U.S.C. § 372(c)(10), *infra; See also* Eleventh Circuit Rule 8.

jury material, without requiring this Court to conduct the review prohibited by subsection (c)(10).

Finally, the argument is made that under 28 U.S.C. § 455(a)[20] all Article III judges are disqualified from hearing this petition. To hold that all Article III judges are disqualified to hear the petition would severely limit the work of the Committee and is contrary to the obvious intent of Congress. The public interest in a fair and correct resolution of this crucial matter requires this Court to accept its responsibility "to say what the law is," albeit for the first time. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). Therefore, this Court finds that the Rule of Necessity requires that this forum be and remain open and available for a ruling on the petition. *See United States v. Will*, 449 U.S. 200, 217, 101 S.Ct. 471, 481, 66 L.Ed.2d 392 (1980); *Du Plantier v. United States*, 606 F.2d 654, 662 (5th Cir.1979), *cert. denied*, 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 798 (1981); *Atkins v. United States*, 556 F.2d 1028, 1035–40, 214 Ct.Cl. 186 (1977), *cert. denied*, 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978).

## II.

### RULE 6(e) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

■ The decision to grant access to grand jury material is committed to the "substantial discretion" of the district court. *Douglas Oil, supra,* 441 U.S. at 223, 99 S.Ct. at 1675; *see also Pittsburg Plate Glass Co. v. United States,* 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959). Opposition to this petition is based upon the assumption that Fed.R. Crim.P. 6(e)(3)(C)(i) (hereinafter "the Rule" or "Rule 6(e)")[21] provides the exclusive framework within which this discretion is to be exercised. The Committee, on the

other hand, contends that Rule 6(e) does not preclude this Court from fashioning an alternative method for disclosure under its general supervisory authority over grand jury proceedings and records.

Rule 6(e)(3)(C)(i) stands as a codification of the common law rule that the secrecy of grand jury material is to be preserved except in those rare instances where disclosure is necessary to prevent injustice. The Rule recognizes that litigants in a "judicial proceeding", *see United States v. Baggot,* — U.S. ——, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983), will occasionally have a "particularized need", *see United States v. Sells Engineering, Inc.,* — U.S. ——, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983), for grand jury material to prevent an injustice in that proceeding. Thus, disclosure has been deemed proper to impeach a witness or test his credibility, *see, e.g. Dennis v. United States,* 384 U.S. 855, 868–75, 86 S.Ct. 1840, 1848–51, 16 L.Ed.2d 973 (1966); *United States v. Procter & Gamble Co.,* 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958), or to refresh a witness' recollection, *see e.g., Douglas Oil, supra* 441 U.S. at 222 n. 12, 99 S.Ct. at 1674 n. 12; *In re Corrugated Container Antitrust Litigation,* 687 F.2d 52 (5th Cir.1982).

■ *Baggot* and *Sells* reaffirm the broad applicability of the Rule for garden-variety petitions for grand jury disclosure. The unique circumstances out of which this petition arise, coupled with the recognized need for access by the Committee to enable it to perform its statutory duty, clearly remove this petition from the "narrow area" of secrecy codified by the Rule. *In re Report and Recommendation of June 5, 1972 Grand Jury,* 370 F.Supp. 1219, 1227 (D.D.C.1974). This Court is not persuaded that a Committee composed of Article III judges, acting as an arm of the judiciary and in furtherance of a Congressional mandate, has no authority other than

---

**20.** 28 U.S.C. § 455(a) provides that "Any ... judge ... of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

**21.** Fed.R.Crim.P. 6(e)(3)(C)(i) provides that "[d]isclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—(i) when so directed by a court preliminarily to or in connection with a judicial proceeding. ..."

that given by Rule 6(e) to review grand jury material. In similarly unique circumstances, it has been recognized that the Rule is not the sole repository of the district court's authority to grant access to grand jury records. *In re Biaggi*, 478 F.2d 489, 492–93 (2nd Cir.1973); *In re Report and Recommendation of June 5, 1972 Grand Jury, supra,* at 1227–29; *In re Bullock*, 103 F.Supp. 639, 641 (D.D.C.1952); *see also In re Grand Jury Investigation of Ven-Fuel*, 441 F.Supp. 1299, 1304–07 (M.D. Fla.1977). This is because "Rule 6(e) ... was not intended to create new law, [and] remains subject to the law or traditional policies that gave it birth." *In re Report and Recommendation of June 5, 1972 Grand Jury, supra* at 1229. These traditional policies demonstrate that the primary concern is which course—disclosure or non-disclosure—will further the ends of justice and the search for the truth. *United States v. Socony-Vacuum*, 310 U.S. 150, 233–34, 60 S.Ct. 811, 849, 84 L.Ed. 1129 (1940). The inherent power of the supervising court to disclose grand jury material will be affirmatively exercised only if the recognized need for the material outweighs the traditional considerations justifying secrecy. Therefore, it is this Court's duty to balance the need for effective administration of the Congressionally established procedure for judicial self-discipline against the traditional factors favoring the " 'indispensable secrecy of [the] grand jury proceedings.' " *Procter & Gamble, supra* 356 U.S. at 682, 78 S.Ct. at 986 (*quoting United States v. Johnson*, 319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546 (1943)). A careful evaluation of these competing concerns leads this Court to the inescapable conclusion that the minimal trespass upon the traditional values associated with grand jury confidentiality is significantly outweighed by the need of the Special Committee to examine the grand jury material and expeditiously execute its Congressional duty, thereby furthering the broad purposes of the Act.

The traditional policies advanced for preserving the secrecy of grand jury material have been "correctly summarized" as

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Douglas Oil, supra* 441 U.S. at 219 n. 10, 99 S.Ct. at 1673 n. 10 (*quoting United States v. Rose*, 215 F.2d 617, 628–29 (3rd Cir.1954)).

The first three reasons for secrecy are no longer applicable where, as here, the grand jury has concluded its investigation and has been discharged. *United States v. Moten*, 582 F.2d 654, 663 (2nd Cir.1978); *In re Disclosure of Testimony Before the Grand Jury (Troia)*, 580 F.2d 281, 287 (8th Cir.1978); *Illinois v. Sarbaugh*, 552 F.2d 768, 775 (7th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977); *In re Report and Recommendation of June 5, 1972 Grand Jury, supra* at 1229; *see also, United States v. Socony-Vacuum, supra* 310 U.S. at 234, 60 S.Ct. at 849 ("[A]fter the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it."). There has been no showing that allowing the Special Committee access will impede an ongoing investigation, or otherwise affect any civil or criminal proceeding. The rationale of the fourth and fifth reasons, however, still has force in these circumstances. Preserving the secrecy of past grand jury proceedings facilitates the effective functioning of future grand juries, by reassuring future witnesses that their testimony will, as a

general rule, remain confidential. *Douglas Oil, supra* 441 U.S. at 222, 99 S.Ct. at 1674. In addition, Judge Hastings clearly falls within the class protected by the fifth reason for grand jury secrecy: He is an "innocent accused." Although the return of an indictment against Judge Hastings removed his interest in maintaining the secrecy of the existence of the grand jury investigation, his subsequent acquittal intensifies his interest in preserving the secrecy of the grand jury material itself.

Balanced against the interest in preserving uninhibited witness testimony and the primary interest of an individual acquitted of criminal charges, is the overriding Congressional determination that the judiciary shall have the responsibility and authority to police itself. The public and Congressional interest in the effective administration of the Act is compelling.[22] The Act requires a full, fair, and timely investigation by the Committee so that public confidence in judicial integrity and credibility may be preserved. Society is entitled to have a mechanism that works to the end that innocent judges and magistrates are protected in their reputations and independence and that the judiciary is kept honorable and perceived to be so. This Court, itself governed by the Act, cannot reasonably deny other judges access to information that will shed light on the truth. The

Court has no evidence that Congress anticipated that this type of proceeding might be brought under the Act. Nevertheless, to deny the petition would thwart the broad intent of the Act, and not serve the traditional policy upon which grand jury secrecy is based. Since the request is within the authority of the Committee, the Court should "presumptively favor disclosure" to those who are charged with the responsibility for performing duties under this stage of the Act. *Cf. In re Report and Recommendation of the June 5, 1972 Grand Jury, supra* at 1227. The petition must be and will be granted.

## III.

## CONCLUSIONS

### A. *Disclosure to Committee*

■ Disclosure to the Special Committee impinges only slightly upon the traditional interests that remain in preserving grand jury secrecy in this proceeding, while simultaneously allowing the Committee expeditiously to comply with its Congressional directive. The continuing interest of Judge Hastings in maintaining the validity of his acquittal cannot be gainsaid. This interest, however, must be subordinated to the public interest in the integrity and independence of the judiciary.[23] The Act re-

---

**22.** This compelling public interest has been recognized in other comparable circumstances. For example, in *In re Special February 1971 Grand Jury v. Conlisk*, 490 F.2d 894 (7th Cir. 1973) five policemen moved to vacate two prior district court orders authorizing disclosure to the Superintendent of Police of the grand jury transcripts of the policemen's testimony before the grand jury. In affirming the district court, the court of appeals noted that "[b]ecause the maintenance of police integrity and credibility is essential to public confidence, the disclosure of testimony by policemen to a police board in order to discipline those abusing public offices is a sufficient public interest to override the policy of shielding the grand jury from public scrutiny." *Id.* at 898. The required need under Rule 6(e) was therefore satisfied. In *United States v. Salanitro*, 437 F.Supp. 240 (D.Neb. 1977), *aff'd sub nom. In re Disclosure of Testimony Before the Grand Jury (Troia)*, 580 F.2d 281 (8th Cir.1978) a proceeding under Rule 6(e) was instituted by the City of Omaha, the Council

on Discipline of the Nebraska State Bar Association, the Nebraska Commission of Judicial Qualifications, and a member of the Judiciary Committee of the Nebraska Legislature to obtain grand jury materials that alleged misconduct by various government officials. The court observed that "[r]eestablishing faith in state and city governments by proving or disproving the faithfulness of [public] officials is a goal with enough urgency to ·carry a major part of a compelling and particularized need." 437 F.Supp. at 245.

**23.** The public interest in the effective operation of the judicial branch has, in other circumstances, been deemed sufficient to permit disciplinary proceedings to be brought against members of the bar subsequent to their acquittal of criminal charges. *See, e.g.,. In re Echeles*, 430 F.2d 347, 350 (7th Cir.1970) ("the real question at issue ... is the public interest and [the] right to continue to practice a profession imbued with the public trust"); *Best v. State Bar of*

quires that this interest be vindicated through the judicial self-regulation mechanism-it outlines. Prior acquittal of specific criminal charges does not obviate the need for further inquiry under the Act, for the Act encompasses any conduct "prejudicial to the effective and expeditious administration of the business of the courts." § 372(c)(1). At stake in the petition before the Court is nothing less than the public's faith and trust in the judicial system.

Furthermore, disclosure to the Committee, an arm of the judiciary, presents little risk of chilling the truthful testimony of prospective witnesses before future grand juries. *Cf., Douglas Oil, supra* 441 U.S. at 219, 99 S.Ct. at 1672. The Committee is composed of judges who routinely have the duty to review grand jury materials in the performance of the duties of their offices. The Committee does not seek public dissemination, but disclosure only to itself, and is bound by the Act to keep "[a]ll paper, documents, and records of proceedings related to investigations ... confidential." § 372(c)(14). Disclosure to the Committee carries none of the risks associated with disclosure to private or government petitioners. *Cf., United States v. Sells Engineering, supra* 103 S.Ct. at 3142. The traditional sanctity of grand jury records will be substantially preserved by the character of the parties to whom the material will be disclosed and the broad confidentiality provisions of the Act. In addition, the Court will impose in its order entered contemporaneously stringent "protective limitations on the use of the disclosed material" to further ensure confidentiality. *Douglas Oil, supra* 441 U.S. at 223, 99 S.Ct. at 1675.

The unique circumstances out of which this petition arises, coupled with the status of the parties who will review the material and the confidentiality requirements of the Act, also make it inappropriate for this Court to conduct an *in camera* review of the grand jury records before their release. In the usual case, it is necessary to limit access solely "to that material directly pertinent to the need for disclosure." *Douglas Oil, supra* at 224, 99 S.Ct. at 1675; *see also Procter & Gamble, supra* 356 U.S. at 683, 78 S.Ct. at 986 (disclosure is to be "discretely and limitedly"). This is usually accomplished by *in camera* inspection, *see, e.g., United States v. Sobotka,* 623 F.2d 764, 768 (2nd Cir.1980); *United States v. Duff,* 529 F.Supp. 148, 156 (N.D.Ill.1981); *In re Midwest Milk Monopolization Litigation,* 454 F.Supp. 281, 287–88 (W.D.Mo. 1978), or other procedures that assure that the competing interests in secrecy and disclosure are properly evaluated, *see, e.g., Douglas Oil, supra* 441 U.S. at 226–31, 99 S.Ct. at 1676–79; *In re Grand Jury Proceedings (Wright II),* 654 F.2d 268, 272–75 (3rd Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981); *Illinois v. Sarbaugh, supra* at 773; *In re Disclosure of Testimony Before the Grand Jury (Troia), supra; United States v. Alston,* 491 F.Supp. 215 (D.D.C.1980). Here, however, Congress has imposed a duty upon this Special Committee to conduct a thorough investigation and evaluation of the complaint referred to it. It would be contrary to the intent of the Act to allow this Committee access only to that grand jury evidence which this Court deems relevant. To do so would usurp the investigatory function Congress has placed within the exclusive province of the Special Committee.[24] Therefore, to the extent it has the discretion to make an *in camera* review of the grand jury material sought by this petition, this Court exercises its discretion not to do so.

*California,* 57 Cal.2d 633, 637, 371 P.2d 325, 328, 21 Cal.Rptr. 589, 592 (1962) (The proceeding "is for the protection of the public, the courts, and the legal profession."); *Ohio State Bar Ass'n v. Weaver,* 41 Ohio St.2d 97, 100, 322 N.E.2d 665, 667 (1975) (Proceedings "are instituted to safeguard the courts and to protect the public.").

**24.** Furthermore, the Court will not require that the Committee demonstrate that it had exhausted all alternative investigatory channels before seeking the material at issue here. *Cf. United States v. Sells Engineering, supra* 103 S.Ct. at 3142; *In re Grand Jury Proceedings, Miller Brewing Co.,* 687 F.2d 1079, 1092 n. 17 (7th Cir.1982).

## B. *Disclosure to Judge Hastings*

Having concluded that the petition of the Special Committee shall be granted, the Court is presented with two additional issues: (1) whether Judge Hastings is entitled at this point to equal access, and (2) whether Judge Hastings is entitled to discovery and evidentiary rights to defend against disclosure. Counsel for Judge Hastings contends that both of these procedural issues must be resolved by the Court if the motion to dismiss the petition is denied.

Though neither the Act nor the Local Rules speak directly to these procedural issues, they do offer general guidance. The Act describes the Special Committee's responsibility with reference to both "investigations" and "proceedings." The structure of the Act and the "inquisitorial-administrative" model upon which it is based suggest a distinction between an "investigation" and a "proceeding." *Cf.* § 372(c)(5) and Eleventh Circuit Rule 5(a) *with* § 372(c)(11) and Eleventh Circuit Rule 5(b). The sole duty at the investigatory stage of the Committee's work is to "conduct an investigation as extensive as it considers necessary." § 372(c)(5). This "broad flexibility and general authority to investigate," H.R.Rep. 1313, *supra* at 11, is unhindered by any specified procedural requirements. In contrast, the Act requires that any rules prescribed by the judicial councils or the Judicial Conference "for the conduct of proceedings" under the Act contain certain procedural rights. *See* § 372(c)(11). The "minimal due process rights," H.R.Rep. 1313, *supra* at 14, that must be afforded a judicial officer whose conduct is the subject of a complaint are

> an opportunity to appear (in person or by counsel) at proceedings conducted by the investigating panel, to present oral and

documentary evidence, to compel the attendance of witnesses or the production of documents, to cross-examine witnesses, and to present argument orally or in writing.

§ 372(c)(11)(B). The Eleventh Circuit Rules secure these rights in language that generally tracks the Act. *See* Eleventh Circuit Rule 5(b).

These procedural rights are intended to insure that the findings and recommendations of the Special Committee will not be arbitrary. *See* H.R.Rep. 1313, *supra* at 14. These procedural protections, however, are triggered only at the point "proceedings [are] conducted by" the Committee. § 372(c)(11)(B). This petition does not require this Court to determine the point at which a Special Committee's activities shall be denominated a "proceeding".[25] What is clear, however, is that this petition, and the evidence that will be obtained from its grant, fall within the investigatory sphere of the Committee's activities. During the investigatory stage, the required procedural protections are minimal at most. *See, e.g., Hannah v. Larche*, 363 U.S. 420, 440–53, 80 S.Ct. 1502, 1513–20, 4 L.Ed.2d 1307 (1960); *McCartney v. Commission on Judicial Qualifications*, 12 Cal.3d 512, 116 Cal.Rptr. 260, 265, 526 P.2d 268, 273 (1974); *In re Troy*, 364 Mass. 15, 21–25, 306 N.E.2d 203, 207–09 (1973); *In re "Judge Anonymous"*, 590 P.2d 1181, 1185–89 (Okl. 1978).[26]

 There may or may not be "proceedings" resulting from the Committee's investigation in which, under the Act and our traditional concepts of procedural due process, Judge Hastings will be entitled to the full range of defenses and procedures to effect them, but the Court's ruling on this investigative petition is not such a "proceeding."[27] The type and scope of the

---

**25.** *But see* Third Circuit Rule 1(E), which defines "proceeding" to mean "any meeting of a special committee ... or of the Judicial Council at which record evidence is taken."

**26.** *See also,* Third Circuit Rule 6(B)(i) Reporters Note, indicating that "[w]itnesses can be interviewed and documents secured without the participation of the judge or magistrate whose conduct is the subject of the complaint."

**27.** Before this Court, Judge Hastings has been given all the process which he is due: notice and an opportunity to be heard. *Cf.* Fed.R. Crim.P. 6(e)(3)(D).

Judge's procedural rights at this stage of the Committee investigation is a matter whose final resolution is committed to the Judicial Council of the Eleventh Circuit and the Judicial Conference of the United States. Under subsection (c)(11) of the Act, both the Judicial Council and the Judicial Conference have the authority to prescribe rules governing the procedural questions raised here.[28] In addition, the Act provides that a complainant or judicial officer "aggrieved by an action of the judicial council ... may petition the Judicial Conference of the United States [or its standing committee established under 28 U.S.C. § 331] for review thereof." § 372(c)(10). The Court can assume, *arguendo*, that procedural questions might appropriately be raised in that forum. Thus, beyond those procedural rights mandated by subsection (c)(11), it is for the Judicial Conference or the judicial council to determine if, when, and what procedural protections shall be afforded a judicial officer subject to a complaint under the Act.[29] *Cf. In re Imperial "400" National, Inc.*, 481 F.2d 41, 47–49

(3rd Cir.), *cert. denied*, 414 U.S. 880, 94 S.Ct. 68, 38 L.Ed.2d 125 (1973). Judge Hastings' request that this Court afford him certain procedural rights and protections is therefore premature.[30] *See Chandler v. Judicial Council of the Tenth Circuit*, 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970).

## DECISION

For the foregoing reasons, the Court finds that the substantial interest in judicial accountability, integrity, and independence—safeguarded by the Act's self-discipline mechanism—significantly outweighs the lesser public interest in precluding the narrowly circumscribed, non-public disclosure sought by the Committee for its limited statutory purpose. Therefore, the petition of the Special Committee will be GRANTED, the motion to dismiss the petition will be DENIED, and the cross-petition for full public disclosure will be DENIED

**28.** *See* § 372(c)(11). Subsection (c)(11) has given the judicial councils the flexibility to experiment and develop procedures under the Act. For example, three councils offer differing interpretations of the question whether the Federal Rules of Evidence should be applied at "proceedings" conducted by the special committee or the council. The First Circuit Rules state that "[t]he proceedings will be guided by but not bound by the Federal Rules of Evidence." *See* Judicial Council of the First Circuit, Rules for Processing Complaints of Judicial Misconduct, Rule 14. The Second Circuit provides that "[a]t the request of the judicial officer whose conduct is the subject of a complaint, the Federal Rules of Evidence shall apply." *See* Local Rule 0.24(c)—Complaints with Respect to Conduct of Judges. Finally, the Third Circuit provides that "[e]xcept where inappropriate, the provisions of the Federal Rules of Evidence shall govern." *See* Third Circuit Rules 6(D)(iv) and 7(D)(iv).

**29.** *See also*, H.R.Rep. 1313, *supra* at 4. ("[R]ather than create luxurious mechanisms such as special courts and commissions—with all the trappings of the adversarial process, including legal counsel, written transcripts, discovery and cross examination, the legisla[tion] plac[es] primary administrative responsibility within the judicial branch of government.")

The Court notes that at oral argument, counsel for the Committee suggested that the Com-

mittee could not issue its report without a "proceeding" under subsection (c)(11). Counsel indicated that Judge Hastings would be given access to the grand jury material if such a "proceeding" were to occur. The Court expresses no opinion as to the validity of counsel's suggested procedure. *But see* Third Circuit Rule 6(C), which provides that "[t]he judge or magistrate whose conduct is the subject of the complaint shall have access to all documents before the Special Committee at such time as is appropriate in light of the needs of the Special Committee's investigation and the [right to receive notice and an opportunity to appear or present argument.]"

**30.** Since the responsibility for developing procedural rules lies with the judicial council and the Judicial Conference, the Court cannot agree with Judge Hastings' vigorous assertion that the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence must apply to the resolution of this petition. This is an extraordinary proceeding where the judicial power has been invoked to resolve an administrative matter wholly within the judicial branch of government. Judge Hastings is not a defendant before this Court; the Committee is neither plaintiff nor prosecutor. This proceeding thus bears few of the indicia usually found in those actions to which the federal rules apply.

in a separate Order filed contemporaneously with this Opinion.

## APPENDIX

### 28 U.S.C. § 372(c)

(c)(1) Any person alleging that a circuit, district, or bankruptcy judge, or a magistrate, has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts, or alleging that such a judge or magistrate is unable to discharge all the duties of office by reason of mental or physical disability, may file with the clerk of the court of appeals for the circuit a written complaint containing a brief statement of the facts constituting such conduct.

(2) Upon receipt of a complaint filed under paragraph (1) of this subsection, the clerk shall promptly transmit such complaint to the chief judge of the circuit, or, if the conduct complained of is that of the chief judge, to that circuit judge in regular active service next senior in date of commission (hereafter, for purposes of this subsection only, included in the term "chief judge"). The clerk shall simultaneously transmit a copy of the complaint to the judge or magistrate whose conduct is the subject of the complaint.

(3) After expeditiously reviewing a complaint, the chief judge, by written order stating his reasons, may—

(A) dismiss the complaint, if he finds it to be (i) not in conformity with paragraph (1) of this subsection, (ii) directly related to the merits of a decision or procedural ruling, or (iii) frivolous; or

(B) conclude the proceeding if he finds that appropriate corrective action has been taken.

The chief judge shall transmit copies of his written order to the complainant and to the judge or magistrate whose conduct is the subject of the complaint.

(4) If the chief judge does not enter an order under paragraph (3) of this subsection, such judge shall promptly—

(A) appoint himself and equal numbers of circuit and district judges of the circuit to a special committee to investigate the facts and allegations contained in the complaint;

(B) certify the complaint and any other documents pertaining thereto to each member of such committee; and

(C) provide written notice to the complainant and the judge or magistrate whose conduct is the subject of the complaint of the action taken under this paragraph.

(5) Each committee appointed under paragraph (4) of this subsection shall conduct an investigation as extensive as it considers necessary, and shall expeditiously file a comprehensive written report thereon with the judicial council of the circuit. Such report shall present both the findings of the investigation and the committee's recommendations for necessary and appropriate action by the judicial council of the circuit.

(6) Upon receipt of a report filed under paragraph (5) of this subsection, the judicial council—

(A) may conduct any additional investigation which it considers to be necessary;

(B) shall take such action as is appropriate to assure the effective and expeditious administration of the business of the courts within the circuit, including, but not limited to, any of the following actions:

(i) directing the chief judge of the district of the magistrate whose conduct is the subject of the complaint to take such action as the judicial council considers appropriate;

(ii) certifying disability of a judge appointed to hold office during good behavior whose conduct is the subject of the complaint, pursuant to the procedures and standards provided under subsection (b) of this section;

(iii) requesting that any such judge appointed to hold office during good behavior voluntarily retire, with the provision that the length of service requirements under section 371 of this title shall not apply;

(iv) ordering that, on a temporary basis for a time certain, no further

cases be assigned to any judge or magistrate whose conduct is the subject of a complaint;

(v) censuring or reprimanding such judge or magistrate by means of private communication;

(vi) censuring or reprimanding such judge or magistrate by means of public announcement; or

(vii) ordering such other action as it considers appropriate under the circumstances, except that (I) in no circumstances may the council order removal from office of any judge appointed to hold office during good behavior, and (II) any removal of a magistrate shall be in accordance with section 631 of this title and any removal of a bankruptcy judge shall be in accordance with section 153 of this title; and

(C) shall immediately provide written notice to the complainant and to such judge or magistrate of the action taken under this paragraph.

(7)(A) In addition to the authority granted under paragraph (6) of this subsection, the judicial council may, in its discretion, refer any complaint under this subsection, together with the record of any associated proceedings and its recommendations for appropriate action, to the Judicial Conference of the United States.

(B) In any case in which the judicial council determines, on the basis of a complaint and an investigation under this subsection, or on the basis of information otherwise available to the council, that a judge appointed to hold office during good behavior has engaged in conduct—

(i) which might constitute one or more grounds for impeachment under article I of the Constitution; or

(ii) which, in the interest of justice, is not amenable to resolution by the judicial council,

the judicial council shall promptly certify such determination, together with any complaint and a record of any associated proceedings, to the Judicial Conference of the United States.

(C) A judicial council acting under authority of this paragraph shall, unless contrary to the interests of justice, immediately submit written notice to the complainant and to the judge or magistrate whose conduct is the subject of the action taken under this paragraph.

(8) Upon referral or certification of any matter under paragraph (7) of this subsection, the Judicial Conference, after consideration of the prior proceedings and such additional investigation as it considers appropriate, shall by majority vote take such action, as described in paragraph (6)(B) of this subsection, as it considers appropriate. If the Judicial Conference concurs in the determination of the council, or makes its own determination, that consideration of impeachment may be warranted, it shall so certify and transmit the determination and the record of proceedings to the House of Representatives for whatever action the House of Representatives considers to be necessary.

(9)(A) In conducting any investigation under this subsection, the judicial council, or a special committee appointed under paragraph (4) of this subsection, shall have full subpoena powers as provided in section 332(d) of this title.

(B) In conducting any investigation under this subsection, the Judicial Conference, or a standing committee appointed by the Chief Justice under section 331 of this title, shall have full subpoena powers as provided in that section.

(10) A complainant, judge, or magistrate aggrieved by a final order of the chief judge under paragraph (3) of this subsection may petition the judicial council for review thereof. A complainant, judge, or magistrate aggrieved by an action of the judicial council under paragraph (6) of this subsection may petition the Judicial Conference of the United States for review thereof. The Judicial Conference, or the standing committee established under section 331 of this title, may grant a petition filed by a complainant, judge, or magistrate under this paragraph. Except as expressly provided in this paragraph, all orders and determinations, including denials of peti-

tions for review, shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise.

(11) Each judicial council and the Judicial Conference may prescribe such rules for the conduct of proceedings under this subsection, including the processing of petitions for review, as each considers to be appropriate. Such rules shall contain provisions requiring that—

(A) adequate prior notice of any investigation be given in writing to the judge or magistrate whose conduct is the subject of the complaint:

(B) the judge or magistrate whose conduct is the subject of the complaint be afforded an opportunity to appear (in person or by counsel) at proceedings conducted by the investigating panel, to present oral and documentary evidence, to compel the attendance of witnesses or the production of documents, to cross-examine witnesses, and to present argument orally or in writing; and

(C) the complainant be afforded an opportunity to appear at proceedings conducted by the investigating panel, if the panel concludes that the complainant could offer substantial information.

Any rule promulgated under this subsection shall be a matter of public record, and any such rule promulgated by a judicial council may be modified by the Judicial Conference.

(12) No judge or magistrate whose conduct is the subject of an investigation under this subsection shall serve upon a special committee appointed under paragraph (4) of this subsection, upon a judicial council, upon the Judicial Conference, or upon the standing committee established under section 331 of this title, until all related proceedings under this subsection have been finally terminated.

(13) No person shall be granted the right to intervene or to appear as amicus curiae in any proceeding before a judicial council or the Judicial Conference under this subsection.

(14) All papers, documents, and records of proceedings related to investigations conducted under this subsection shall be confidential and shall not be disclosed by any person in any proceeding unless—

(A) the judicial council of the circuit, the Judicial Conference of the United States, or the Senate or the House of Representatives by resolution, releases any such material which is believed necessary to an impeachment investigation or trial of a judge under article I of the Constitution; or

(B) authorized in writing by the judge or magistrate who is the subject to the complaint and by the chief judge of the circuit, the Chief Justice, or the chairman of the standing committee established under section 331 of this title.

(15) Each written order to implement any action under paragraph (6)(B) of this subsection, which is issued by a judicial council, the Judicial Conference, or the standing committee established under section 331 of this title, shall be made available to the public through the appropriate clerk's office of the court of appeals for the circuit. Unless contrary to the interests of justice, each such order issued under this paragraph shall be accompanied by written reasons therefor.

(16) Except as expressly provided in this subsection, nothing in this subsection shall be construed to affect any other provision of this title, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, the Federal Rules of Appellate Procedure, or the Federal Rules of Evidence.

(17) The United States Claims Court, the Court of International Trade, and the Court of Appeals for the Federal Circuit shall each prescribe rules, consistent with the foregoing provisions of this subsection, establishing procedures for the filing of complaints with respect to the conduct of any judge of such court and for the investigation and resolution of such complaints. In investigating and taking action with respect to any such complaint, each such court shall have the powers granted to a judicial council under this subsection.

Pub.L. No. 96–458, § 3, 94 Stat. 2035, 2036–40 (1980), *as amended by* Pub.L. No. 97–164, Title I, § 112(c), 96 Stat. 29 (1982).

### ORDER

For the reasons set forth in a Memorandum Opinion filed contemporaneously herewith,

IT IS ORDERED that the motion of the Miami Herald Publishing Company to intervene and allow public access to the records of Grand Jury No. 81–1–GJ (MIA) be and the same is hereby DENIED.

### MEMORANDUM ORDER

Before the Court is the Petition of the Miami Herald Publishing Company to allow it to inspect and copy the record, transcript, minutes, and exhibits of the proceedings of the federal grand jury, now discharged, which indicted United States District Judge Alcee L. Hastings. This petition seeks the identical material sought by a petition designated as *In re Petition to Inspect and Copy Grand Jury Materials*, Case No. 81–1–GJ (MIA), initiated by a Special Committee of the Judicial Council of the Eleventh Circuit appointed pursuant to 28 U.S.C. § 372(c)(4)(A) of the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980.

Having considered the petition, briefs, and record, the Court concludes that the petition should be denied. The petition seeks wholesale public disclosure that is wholly inconsistent with the settled rules preserving the secrecy of matters occurring before the grand jury.

IT IS THEREFORE ORDERED that the petition of the Miami Herald Publishing Company to inspect and copy the record of the proceedings of Grand Jury No. 81–1–GJ (MIA) be and the same is hereby DENIED. The motion to consolidate this petition with Case No. 81–1–GJ (MIA) is therefore DISMISSED as moot.

### ORDER

For the reasons discussed in a Memorandum Opinion filed contemporaneously herewith,

IT IS ORDERED that the petition filed by the Special Committee of the Judicial Council of the Eleventh Circuit to inspect the grand jury records in *United States v. Hastings*, 81–596–Cr., Grand Jury No. 81–1–GJ (MIA) is GRANTED, subject to the conditions set out in this Order; the motion of Judge Alcee L. Hastings to dismiss the petition is DENIED; and the cross-petition of Judge Alcee L. Hastings for Public disclosure of the Grand Jury Records is DENIED.

1. IT IS FURTHER ORDERED, that the United States Attorney for the Southern District of Florida (Miami) shall procure and disclose to the Special Committee and its two designated counsel all records, transcripts, minutes, and exhibits of Grand Jury 81–1–GJ (MIA). The Committee and counsel shall have access to these Grand Jury Records from the tenth (10th) day following the date of the entry of this Order, and for a period of ninety (90) days thereafter.

2. IT IS FURTHER ORDERED, that the only persons to whom the Grand Jury Records are to be disclosed are the Special Committee Members, Hon. John C. Godbold, Hon. Gerald B. Tjoflat, Hon. Frank M. Johnson, Jr., Hon. Sam C. Pointer, Jr. Hon. William C. O'Kelley, and the Committee's counsel, John Doar, Esq. and G. Stewart Webb, Jr., Esq. In addition, the Special Committee shall designate one additional person to provide secretarial assistance to the Committee and counsel. The person so designated shall execute a written oath before an Article III Judge not to reveal any matters that occurred before the grand jury, unless ordered to do so by this Court.

3. IT IS FURTHER ORDERED, that the Special Committee and its counsel shall review the material in the office of the United States Attorney for the Southern District of Florida at Miami, or at some other place mutually agreeable to the Committee and the United States Attorney in the United States Courthouse, Miami, Florida. The United States Attorney for the Southern District of Florida shall have the responsibility for implementing the provisions of this Order, and the continuous responsibility for preserving the secrecy of the Grand Jury Records.

4. IT IS FURTHER ORDERED, that the review of the Grand Jury Records shall

take place at such hours as are mutually convenient for the United States Attorney and the Committee. No persons other than the members of the Special Committee and Messrs. Doar and Webb shall be allowed to be present in the room while any substantive discussion of the Records is taking place. The Office of the United States Attorney shall provide such other security measures as will ensure the secrecy of the Grand Jury Records, including but not limited to a log noting the dates and times the records are reviewed, and the names of the persons conducting the review. The log shall be recorded by the United States Attorney or a designated United States Marshal. The log shall be maintained separate and apart from all other records and files, under appropriate security precautions as to ensure confidentiality.

5. IT IS FURTHER ORDERED, that except as provided in Paragraph Six (6) of this Order, there shall be no reproduction of the Grand Jury Records, by photocopying, electronic reproduction or recording, or by any other means, manual or mechanical. The members of the Special Committee and Messrs. Doar and Webb may take written or recorded notes of the records reviewed. These notes, however, shall remain in their sole and absolute possession, and shall not be reproduced nor viewed by any person not associated with the Committee. In addition, the members of the Special Committee and counsel shall maintain a confidential master index describing each Grand Jury document reviewed in the course of their investigation.

6. IT IS FURTHER ORDERED, that the Special Committee and Messrs. Doar and Webb shall be permitted to make one (1) copy of those Grand Jury Records necessary to substantiate or supplement the written report required under 28 U.S.C. § 372(c)(5). These copies shall be sealed and remain with the United States Attorney for the Southern District of Florida at Miami, except during those periods when the copies shall be necessary for the Special Committee to execute its duty under 28 U.S.C. § 372(c)(5). Thereafter, the copies shall be returned to the United States At-

torney for the Southern District of Florida and replaced under seal. There shall be no other reproductions made of the Grand Jury Records without leave of this Court.

7. IT IS FURTHER ORDERED, that the members of the Special Committee, Messrs. Doar and Webb, and the secretarial assistant provided for in Paragraph Two (2) of this Order shall hold in the strictest confidence all information and inferences that may be gleaned from the Grand Jury Records.

8. This Court retains its authority and control over the Grand Jury Records. This Order, however, shall not be construed to deny the Special Committee any powers reserved to it under 28 U.S.C. § 372(c).