# Disclosure of Grand Jury Material to the Intelligence Community

Grand Jury material subject to the requirements of Rule 6(e) of the Federal Rules of Criminal Procedure may be disclosed to agencies in the Intelligence Community pursuant to Rule 6(e) insofar as necessary to assist government attorneys in performing their duties to enforce federal criminal law, but may not, under Rule 6(e), be used by the recipient agencies for other purposes, including intelligence purposes.

In circumstances where there is a compelling necessity for grand jury material to be made available to the President in furtherance of his constitutional responsibilities over foreign affairs and national defense, and where the President has authorized the provision of such material to the Intelligence Community, we believe that a court should and would authorize such disclosure outside the provisions of Rule 6(e), on the basis of Article II of the Constitution and separation of powers principles. Indeed, in such compelling circumstances, a constitutionally necessitated disclosure could properly be made by attorneys for the Government even without prior court approval.

August 14, 1997

MEMORANDUM OPINION FOR THE ACTING COUNSEL
OFFICE OF INTELLIGENCE POLICY AND REVIEW

This responds to your request for our opinion concerning the permissibility of prosecutors in the Department of Justice disclosing grand jury information to agencies in the Intelligence Community ("IC") for certain official purposes.[1] In subsequent communications with your office, we have identified a number of more specific questions raised by your inquiry.

The permissibility of such disclosures will generally depend upon a number of factual considerations, particularly the specific nature of the information in question and the specific purposes for which Department attorneys would disclose it to IC officials. In addition, some materials considered by a grand jury (e.g., subpoenaed bank records) may not be subject to secrecy restrictions at all because they do not constitute "matters occurring before the grand jury" within the meaning of Rule 6(e) of the Federal Rules of Criminal Procedure. See Fed. R. Crim. P. 6(e)(2). With respect to material that is subject to Rule 6(e), we conclude that the Rule clearly does not authorize disclosure for intelligence purposes and that material that is disclosed to the IC for purposes of assisting the enforcement of federal criminal law may not, under the express terms of the Rule, be used for any other purpose.[2]

In response to a specific question, we nevertheless conclude that in a situation contemplated by neither Rule 6(e) nor the prevailing case law — i.e., where there

---

[1] The term "intelligence community" includes, inter alia, the Central Intelligence Agency ("CIA"), the National Security Agency, the Defense Intelligence Agency ("DIA"), and the intelligence elements of the Armed Services, the Federal Bureau of Investigation ("FBI"), and the Department of the Treasury See 50 U S C § 401a(4) (1994)

[2] For reasons of brevity, matters occurring before a grand jury are sometimes referred to herein as "6(e) material" or "grand jury information "

159

is a compelling necessity for 6(e) material to be made available to the President in furtherance of his constitutional responsibilities over foreign affairs and national defense and where the President has authorized the provision of such material to the IC — we believe a court should and would authorize such disclosure outside the provisions of Rule 6(e), on the basis of Article II of the Constitution and separation of powers principles. *Cf. Disclosure of Grand Jury Matters to the President and Other Officials*, 17 Op. O.L.C. 59, 65–69 (1993) ("1993 Opinion"). Indeed, in such compelling circumstances, a constitutionally necessitated disclosure could properly be made by attorneys for the Government even without prior court approval.

In any event, this constitutional authority should not be exercised as a matter of course, but rather only in extraordinary circumstances and with great care. For this reason, we recommend the adoption of procedures to ensure that the proper officials (e.g., the Attorney General or the Deputy Attorney General) are consulted before any constitutionally based disclosure is made.

Before turning to the specific questions presented, we address a number of preliminary matters that are important to the practical resolution of these questions.

## I. GENERAL CONSIDERATIONS

### A. *Rule 6(e) Restrictions and Exceptions*

Rule 6(e) of the Federal Rules of Criminal Procedure establishes a "General Rule of Secrecy" providing that certain persons, including attorneys for the Government, "shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules." Fed. R. Crim. P. 6(e)(2); *see United States v. John Doe, Inc. 1*, 481 U.S. 102, 107 (1987). Under this rule, no attorney for the Department of Justice may disclose "matters occurring before the grand jury" to any other person unless one of the rule's enumerated exceptions applies. The exceptions to the general rule of secrecy are set forth under subparagraph (3) of Rule 6(e). Two of those exceptions are relevant here and may be summarized as follows:

(1) Disclosure to such government personnel as are deemed necessary to assist an attorney for the government in the performance of his duty to enforce federal criminal law, *see* Fed. R. Crim. P. 6(e)(3)(A)(ii); and

(2) Disclosure directed by a court preliminarily to or in connection with a judicial proceeding, *see* Fed. R. Crim. P. 6(e)(3)(C)(i).

Unless a disclosure of 6(e) material to IC personnel can be authorized under one of those two provisions, it cannot be authorized within the framework of Rule 6(e).[3]

---

[3] This opinion assumes that the information that is the subject of your inquiry would actually constitute "matters occurring before a grand jury" and is therefore subject to the restrictions of Rule 6(e) We note, however, that a number of significant opinions have interpreted that term somewhat restrictively, particularly with respect to docu-

## B. *Restrictions on Intelligence Community Law Enforcement Activities*

The most likely basis for authorized disclosure of grand jury information to IC officials would be to provide assistance to prosecutors in their enforcement of federal criminal law pursuant to Rule 6(e)(3)(A)(ii). In such circumstances, the IC would be receiving the information on the basis of some connection to federal *law enforcement* activity. Although a survey of all IC agencies in this regard is not within the scope of this assessment, we note that the CIA, for example, is subject to specific statutory restrictions against law enforcement activity. That raises the preliminary question whether the CIA or its agents would be eligible to receive grand jury material under *any* construction of Rule 6(e)(3)(A)(ii).

In establishing the scope of the CIA's authority, the National Security Act ("NSA") specifies that "the Agency shall have no police, subpoena, or law enforcement powers or internal security functions." 50 U.S.C. § 403–3(d)(1) (1994). The same law provides, on the other hand, that the Director of Central Intelligence ("DCI") "shall be responsible for providing national intelligence" for the President and other executive branch department and agency heads, including the Attorney General. *Id.* § 403–3(a)(1).[4]

Your inquiry did not ask us to examine the various statutory restrictions on the domestic or law enforcement activities of the CIA and other IC agencies and we have refrained from doing so in this memorandum. We do not believe, however, that the restrictions imposed on the CIA under 50 U.S.C. § 403–3(d)(1) are necessarily inconsistent with providing the kind of informational assistance to federal prosecutors authorized under Rule 6(e)(3)(A)(ii). Such assistance may be provided without exercising the kind of police, subpoena, law enforcement, or internal security powers or functions which are foreclosed to the CIA under the statutory restrictions. In providing such authorized assistance, however, CIA officials would remain subject to those statutory restrictions and would be required to limit themselves to activities (such as providing informational support) that do not in themselves constitute the exercise of law enforcement powers.

## C. *The DCI's Right of Access under the National Security Act*

One provision of the NSA could arguably be construed not only to authorize, but even to require, Department of Justice attorneys to make certain national secu-

---

mentary material obtained by the grand jury *See, e g., United States v. Interstate Dress Carriers, Inc ,* 280 F 2d 52, 54 (2d Cir 1960) (restricting Rule 6(e)'s secrecy requirement to material sought in order "to learn what took place before the grand jury," as distinguished from material sought "for its intrinsic value in the furtherance of a lawful investigation")

[4] The relationship between the intelligence-sharing requirements of the NSA and the secrecy restrictions of Rule 6(e) are discussed immediately below in Part I.C.

rity-related grand jury information available to the Director of Central Intelligence. Section 104(a) of the NSA provides as follows:

> To the extent recommended by the National Security Council and approved by the President, the Director of Central Intelligence shall have access to all intelligence related to the national security which is collected by any department, agency, or other entity of the United States.

50 U.S.C. § 403–4(a) (1994). Whether this provision may actually require disclosure of some 6(e) material to the DCI depends on several distinct considerations: (1) to what extent have the NSC and the President mandated the DCI access rights authorized by the statute; (2) may grand jury information covered by Rule 6(e) constitute ''intelligence . . . collected by any department'' within the meaning of the statute; and (3) if the NSA's access requirements can be construed to extend to grand jury information, do those requirements supersede the restrictions of Rule 6(e)?

1. *Implementation of Statutory Authorization.* The general authorization of section 104(a) is implemented by Executive Order No. 12333. Exec. Order No. 12333, 3 C.F.R. 200 (1982). Section 1.6(a) of the Executive Order provides:

> The heads of all Executive Branch departments and agencies shall, in accordance with law *and relevant procedures approved by the Attorney General under this Order,* give the Director of Central Intelligence access to all information relevant to the national intelligence needs of the United States, and shall give due consideration to the requests from the Director of Central Intelligence for appropriate support for Intelligence Community activities.

*Id.* at 204 (emphasis added).

The underscored language raises the question whether the Attorney General must issue specific procedures governing DCI access as a condition precedent to the agencies' obligation to provide access taking effect (it is our understanding that no formal procedures have been issued by the Attorney General under this provision). We do not interpret the Executive Order in that way. Rather, we believe that the Executive Order *itself* imposes a requirement for departments to provide access to the covered category of intelligence insofar as the DCI requests such access. The Executive Order *additionally* requires that the provision of such access must comply with any applicable procedural requirements that the Attorney

General has approved to govern particular categories of information covered by the Executive Order.[5]

Accordingly, we conclude that Executive Order No. 12333 implements section 104(a) of the NSA in a manner that requires the Justice Department, subject to such procedures as may be approved by the Attorney General, to provide the DCI with requested access to "intelligence related to the national security."

2. *"Intelligence" Subject to Access Requirement.* Section 104(a)'s access requirement extends only to "intelligence related to the national security." That phrase is a term of art, requiring consideration of several related NSA definitions in order to determine whether, and to what extent, it applies to national security-related information arising before a grand jury.

Under the NSA, the term "intelligence" includes "foreign intelligence and counter-intelligence." 50 U.S.C. § 401a(1) (1994). The term "foreign intelligence" means "information relating to the capabilities, intentions, or activities of foreign governments or elements thereof, foreign organizations, or foreign persons." *Id.* § 401a(2).[6] Finally, "intelligence related to the national security" is *jointly* defined with the term "national intelligence" as follows:

> (5) The terms "national intelligence" and "intelligence related to the national security"—
>
>> (A) each refer to intelligence which pertains to the interests of more than one department or agency of the Government; and
>> (B) do not refer to counterintelligence or law enforcement activities conducted by the Federal Bureau of Investigation except to the extent provided for in procedures agreed to by the Director of Central Intelligence and the Attorney General, or otherwise as expressly provided for in this title.

*Id.* § 401a(5).

These definitions are broad in scope. "Foreign intelligence," for example, extends to "information relating to the . . . activities of . . . foreign persons." *Id.* § 401a(2). Moreover, apart from the exclusion of information revealing certain counterintelligence or law enforcement activities "conducted by" the FBI, *id.*

---

[5] We should note, however, that to the extent that the information to which the DCI seeks access under section 104(a) concerns *United States persons*, compliance with procedures approved by the Attorney General is a condition precedent to access under the terms of section 2.3 of Executive Order No 12333 *See* 3 C F R at 211. That section specifies that Intelligence Community agencies are authorized to collect or retain information concerning United States persons "only in accordance with procedures established by the head of the agency concerned and approved by the Attorney General, consistent with the authorities provided by Part 1 of this Order." *Id* We understand that such procedures have been approved by the Attorney General

[6] "Counterintelligence" means "information gathered and activities conducted to protect against espionage, other intelligence activities, sabotage, or assassinations conducted by or on behalf of foreign governments or elements thereof, foreign organizations, or foreign persons, or international terrorist activities" 50 U.S C § 401a(3)

§ 401a(5)(B),[7] the definitions contain no apparent indications that information coming to the Department of Justice through its involvement in grand jury proceedings is per se excluded from their scope.

Accordingly, we believe that grand jury information that (1) relates to the activities of foreign governments, foreign organizations, or foreign persons; (2) pertains to the interests of more than one federal department or agency; and (3) is "required for the formulation and/or implementation of national security policy," [8] constitutes "intelligence related to the national security" within the meaning of section 104(a) of the NSA. Consequently, the DCI is authorized to gain access to grand jury information meeting that description when it is obtained by Department of Justice attorneys, unless such access is barred or restricted by the provisions of Rule 6(e).

3. *Conflict between NSA and Rule 6(e).* Even where 6(e) materials encompass national security intelligence subject to the DCI's access rights under section 104(a) of the NSA, Rule 6(e) contains no provision or exception for disclosing the information to the DCI on that basis. Moreover, Rule 6(e)'s provisions for disclosure of grand jury material for purposes of assisting attorneys for the Government, or pursuant to court approval in connection with "judicial proceedings," would not normally be available for purposes of DCI access. *See* Part I.A, *supra* at 160. Consequently, it is necessary to consider whether the DCI access requirements of the NSA should be construed to supersede or override the restrictions of Rule 6(e).

We find no case authority addressing this precise issue. In *Illinois v. Abbott & Associates, Inc.*, 460 U.S. 557 (1983), however, the Supreme Court addressed the comparable issue of whether a statute requiring the Attorney General to disclose information to state attorneys general in connection with certain joint antitrust enforcement matters may override the restrictions of Rule 6(e) when information covered by the disclosure statute encompasses grand jury material otherwise restricted by Rule 6(e). Emphasizing that the disclosure statute in question (section 4F(b) of the Clayton Act, 15 U.S.C. § 15f(b) (1994)) contained the limiting phrase "to the extent permitted by law," the Court held that it did not authorize disclosures of grand jury information outside the procedures of Rule 6(e). More generally, the Court indicated that a statute should not be construed to override the

---

[7] This exclusion from the NSA's definition of "national intelligence" was described as follows in the Senate Committee Report pertaining to that provision.

> In view of the prohibitions contained in section 103(d) of the Act (as added by the bill) as well as in existing law, that the CIA should have no law enforcement or internal security functions, the Committee believes it desirable to exclude information concerning certain of the counter-intelligence and law enforcement activities of the FBI from the definition of "national intelligence." This exclusion is intended to remove information concerning FBI operational activities from the purview of "national intelligence" except where the Director of Central Intelligence and the Attorney General agree that such information can and should be shared

S. Rep No. 102–324, at 26 (1991)

[8] *See* S Rep. No 102–324, at 25, 33.

grand jury secrecy restrictions of Rule 6(e) unless Congress affirmatively expresses its intent to do so. As the Court stated:

> Congress, of course, has the power to modify the rule of secrecy by changing the showing of need required for particular categories of litigants. But the rule is so important, and so deeply rooted in our traditions, that we will not infer that Congress has exercised such a power without affirmatively expressing its intent to do so.

460 U.S. at 572–73 (footnote omitted).

In some respects, section 104(a) of the NSA is distinguishable from section 4F(b) of the Clayton Act as addressed by the Court in *Abbott*. Unlike the latter statute, section 104(a)'s DCI access requirement is not qualified by the phrase "to the extent permitted by law" or the equivalent. Moreover, that express qualification on the section 4F(b) disclosure requirement was a critical element of the *Abbott* Court's holding that it did not override Rule 6(e)'s restrictions. *See* 460 U.S. at 566–68. Further, the *Abbott* opinion also relied heavily upon the fact that section 4F(b)'s legislative history revealed that Congress specifically considered and rejected a provision that would have granted plaintiffs in civil antitrust actions a right of access to grand jury materials after the completion of federal civil or criminal proceedings. *Id.* at 569. There was also specific evidence in the floor debate on section 4F(b) that Congress did not intend to change existing law respecting grand jury materials. *Id.* at 570. Section 104(a)'s pertinent legislative history, in contrast, does not reflect any specific consideration of its relationship to grand jury secrecy. Given these distinguishing factors, it could be argued that the *Abbott* holding does not conclusively resolve the issue presented here.

Nonetheless, the *Abbott* Court's more general assertion that legislative modification of the grand jury secrecy rules can only be accomplished if Congress "affirmatively express[es] its intent to do so," 460 U.S. at 573, presents a formidable rejoinder to the argument that section 104(a) overrides the provisions of Rule 6(e).[9] Neither the text of section 104(a) nor its pertinent legislative history contains such an affirmative expression of intent to override grand jury secrecy restrictions. Section 104(a)'s provision for the DCI's access to "intelligence related to the national security" does not clearly manifest an intent to reach grand jury information, although the "intelligence" covered by the statute could reasonably be interpreted to encompass certain kinds of grand jury information in the

---

[9] One well-recognized rule of construction that is often relevant in reconciling conflicting statutory provisions is inconclusive here Where there is no clearly expressed congressional intention to the contrary, "a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum " *Radzanower v Touche Ross & Co*, 426 U.S. 148, 153 (1976) That raises the question whether Rule 6(e)'s restriction on the disclosure of matters occurring before a grand jury is more "narrow, precise, and specific" than section 104(a)'s later-enacted provision for DCI access to "intelligence related to the national security." Because both provisions deal with narrow and specialized categories of information, we find the rule of relative specificity to no avail in this context.

hands of the Department of Justice. The most that may be said about section 104(a)'s text in this regard is that it is unclear on the point.

Nor does the legislative history provide evidence that the provision was intended to apply to grand jury information that falls within the applicable definition of "intelligence." For example, the pertinent Senate Report's discussion of section 104(a) states that "this authority is similar to existing law" and emphasizes that "the DCI's right of access extends only to 'national intelligence' as that term is defined by the bill." S. Rep. No. 102–324, at 33. The indication that section 104(a) was not intended to substantially change existing law regarding access to national intelligence also tends to undercut the view that section 104(a) was intended to modify Rule 6(e) restrictions, inasmuch as there was no recognized national security exception to such restrictions when section 104(a) was enacted.

Finally, although section 104(a) is not qualified by the phrase "to the extent permitted by law" that was stressed by the Court in *Abbott*, the Executive Order that implements section 104(a) does contain an arguably comparable qualification. Executive Order No. 12333's requirement for agencies to provide the DCI with access to national intelligence is preceded by the qualifying phrase, "in accordance with law." *See* 3 C.F.R. at 204. Because section 104(a)'s requirements apply only "[t]o the extent recommended by the National Security Council and approved by the President," 50 U.S.C. § 403–4(a), those requirements are subject to the restrictions and limitations of Executive Order No. 12333 until it is replaced or revised. Under the Supreme Court's analysis in *Abbott*, *see* 460 U.S. at 565–67, the "in accordance with law" qualification of the Executive Order, although less clear than the "to the extent permitted by law" qualification at issue in *Abbott*, might be construed to mean that section 104(a)'s DCI access requirements are to be applied "in accordance with" the requirements of Rule 6(e), which is part of the "law" referred to in the qualification.[10]

We recognize that the national security concerns underlying the need for the DCI's access to 6(e) material will generally be considerably more compelling than the federal-state antitrust enforcement concerns reflected in section 4F(b) of the Clayton Act. If section 104(a)'s subordination to the restrictions of Rule 6(e) foreclosed all avenues for national security-based access to grand jury information in such compelling circumstances, the deference to Rule 6(e) reflected in the *Abbott* opinion would have to be weighed against countervailing national security considerations. As we explain in Part II, *infra*, however, we believe there is valid *constitutional* authority for executive branch access to grand jury material outside the provisions of Rule 6(e) when national security considerations are sufficiently compelling.

---

[10] We also note that section 2 8 of Executive Order No 12333 provides· "Nothing in this Order shall be construed to authorize any activity in violation of the Constitution or statutes of the United States " *See* 3 C.F R at 213 We do not consider this provision as a conclusive indication that section 1 6(a) of the Order does not require DCI access to 6(e) material, because such access would not be unlawful if section 104(a) of the NSA actually and validly supersedes Rule 6(e) within the scope of its coverage

In light of all the foregoing, we do not believe that section 104(a) of the NSA, as implemented by Executive Order No. 12333, provides sound authority for Justice Department disclosure of 6(e) material constituting "information related to the national security" to the DCI.

## D. *Attorney-Initiated or Court-Approved Disclosure*

Another general consideration is whether, as a practical matter, the Government would be willing to seek prior judicial approval for disclosure of the information to the IC, or whether use of judicial procedures is incompatible with the objectives in question. In the vast majority of circumstances, the provisions for disclosure to government personnel under Rule 6(e)(3)(A)(ii) would provide the only relevant and practical means for possible authorized disclosure to IC officials. That procedure does not require any judicial approval, but it is limited to circumstances where a government attorney needs the assistance of other government personnel in connection with federal criminal law enforcement duties. We believe that most circumstances where disclosure to IC personnel could be justified under the Rule would be cases where a federal prosecutor, or the Attorney General, has a need for intelligence assistance or support in connection with a matter involving enforcement of federal criminal law. In those circumstances, disclosure without court approval would be authorized under subparagraph (A)(ii) insofar as the "necessary assistance" criterion is satisfied.

There may, however, be circumstances where the "self-initiated" disclosure provisions of subparagraph (A)(ii) are unavailable or unsuitable. For example, those provisions would not authorize disclosure of 6(e) material for purposes related to the investigation or prosecution of crimes committed under the laws of a foreign state or to civil enforcement proceedings. Under those circumstances, the additional avenues of disclosure provided by Rule 6(e)(3)(C) could be considered.[11] Under those provisions, disclosure of 6(e) material could arguably be made to IC personnel if the disclosure could be considered "preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(C)(i). That limitation, like the (3)(A)(ii) "use" restrictions, clearly would not permit any disclosures made for intelligence-gathering purposes. However, it would arguably permit court-approved disclosure to IC personnel *if* the purpose was for government attorneys to obtain the IC's informational assistance or assessment in support, for example, of criminal or civil investigations intended to result in some form of judicial enforcement proceedings (e.g., an SEC enforcement proceeding culminating in an application for injunctive relief or a court-approved consent decree).[12]

---

[11] We note that Rule 6(e)(3)(D) permits the court to hold *ex parte* hearings when the Government petitions for court-approved disclosure under the (C)(i) provisions

[12] At least one court has suggested that the (C)(i) provision may extend even to "judicial proceedings" conducted in a foreign state *See, e.g., In Re Baird,* 668 F 2d 432, 434 n 3 (8th Cir) ("We assume, without deciding, that

Continued

Moreover, 6(e) materials obtained under the judicial approval procedures are not subject to the same explicit limitation on use that apply to (A)(ii) disclosures, presumably because a court can address permissible uses in any order it might enter. *See* Fed. R. Crim. P. 6(e)(3)(C).

Some courts have applied a relatively flexible interpretation to the requirement that (3)(C)(i) disclosures must be made "preliminarily to . . . a judicial proceeding." [13] As the standard was described by Judge Learned Hand, writing for the Second Circuit:

> [T]he term "judicial proceeding" includes any proceeding determinable by a court, having for its object the compliance of any person subject to judicial control, with standards imposed upon his conduct in the public interest, even though such compliance is enforced without the procedure applicable to the punishment of crime. An interpretation that should not go at least so far, would not only be in the teeth of the language employed, but would defeat any rational purpose that can be imputed to the Rule.

*Doe v. Rosenberry*, 255 F.2d 118, 120 (2d Cir. 1958). Further, as stated by the Ninth Circuit, "[n]either the possibility that no judicial proceeding will result nor the likelihood that litigation will occur is controlling." *In re Barker*, 741 F.2d at 254.

On the other hand, the Supreme Court has stressed that disclosure under the (3)(C)(i) exception is permitted only where "the primary purpose of disclosure is . . . to assist in preparation or conduct of a judicial proceeding." *United States v. Baggot*, 463 U.S. 476, 480 (1983). Even when the required connection to a judicial proceeding is satisfied, moreover, the courts additionally require a showing of "compelling necessity" and "particularized need" before they will order disclosure of grand jury information under Rule 6(e)(3)(C)(i). *See, e.g., Sobotka.*

In sum, court-approved disclosure of 6(e) material to IC personnel could conceivably be obtained in those circumstances where the purpose of the disclosure would be for the IC to provide information or intelligence in support of an investigation or proceeding that is intended to culminate in a foreseeable judicial proceeding (e.g., a civil proceeding to enjoin the export of dual-use technology to a terrorist front organization, or even the prosecution of a terrorist in the courts

---

the phrase 'judicial proceeding' includes a criminal trial conducted in a foreign country "), *cert denied*, 456 U S 982 (1982)

[13] *See, e g , In re Barker*, 741 F.2d 250 (9th Cir 1984) (investigation of attorney by bar association held preliminary to a judicial proceeding), *United States v Sobotka*, 623 F.2d 764 (2d Cir 1980) (disclosure to bar grievance committee), *Special February 1971 Grand Jury v Conhisk*, 490 F 2d 894, 897 (7th Cir 1973) (disclosure to police board of inquiry); *In re Petition to Inspect and Copy Grand Jury Materials*, 576 F Supp 1275 (S D Fla. 1983) (disclosure to Circuit Judicial Council committee for judicial misconduct investigation), *aff'd*, 735 F 2d 1261 (11th Cir. 1984)

of a foreign state). Although disclosure for this purpose under subparagraph (3)(C)(i) would be very similar to disclosure in order to assist a prosecutor under (3)(A)(ii), the latter provision imposes explicit restrictions on use that are not contained in Rule 6(e)(3)(C)(i). In the case of "judicial proceedings" disclosure, the court is authorized to determine the conditions of disclosure depending upon the particular circumstances. *See* Fed. R. Crim. P. 6(e)(3)(C) (providing that disclosures pursuant to that subsection may be ordered under "such conditions as the court may direct"). Those conditions may or may not include a requirement that the information be used solely in furtherance of the judicial proceedings in question.[14]

Notwithstanding this departure from the explicit "use" restrictions applicable to self-initiated disclosures under Rule 6(e)(3)(A)(ii), however, the subparagraph (3)(C)(i) provision for court-approved disclosure is not likely to provide a meaningful and practical alternative to (A)(ii) disclosure in this context except in very rare circumstances. Insofar as a court might permit disclosure to IC personnel to provide assistance "preliminary to" a civil or criminal judicial enforcement proceeding pursuant to subparagraph (C)(i), we consider it unlikely that the courts would authorize such disclosure without imposing conditions and restrictions on use that would be similar to those applicable under subparagraph (A)(ii) (e.g., permitting use of the 6(e) material only in connection with the anticipated judicial proceeding).

## II. SPECIFIC QUESTIONS

We now respond to the more particularized questions identified in discussions with your office.

**Question 1.** When grand jury material is lawfully disclosed to IC personnel for purposes of assisting an attorney for the Government in the enforcement of federal criminal law pursuant to Rule 6(e)(3)(A)(ii), and the IC does use it to provide such assistance, may the IC also make use of such material for purposes other than federal criminal law enforcement, such as foreign intelligence purposes?

**Response:** No. The law on this point, both codified in the text of Rule 6(e) and as applied in the case law, is unambiguously restrictive. Rule 6(e)(3)(B) provides that government personnel to whom 6(e) material is lawfully disclosed under subparagraph (A)(ii) of the Rule "shall not utilize that grand jury material *for any purpose other than* assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law" (emphasis added). As explained by the court in *United States v. Kilpatrick*, 821 F.2d 1456, 1471

---

[14] *Cf In re Request for Access to Grand Jury Materials*, 833 F.2d 1438. 1445–46 (11th Cir 1987) (approving order issued under Rule 6(e)(3)(C) subject to provision that grand jury materials disclosed in connection with impeachment proceedings would be limited to House of Representatives, as distinct from members of the Senate, because request was made by the House Judiciary Committee based upon the investigative powers held by the House)

(10th Cir. 1987), *aff'd sub nom. Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) (emphasis added) (citation and footnote omitted):

> Federal employees assisting the prosecutor in the investigation and prosecution of federal criminal violations are permitted access to grand jury materials without prior court permission. *However, such support personnel may not use the materials except for purposes of assisting Government attorneys to enforce federal criminal laws. Sells Engineering*, 463 U.S. at 428, 442; *see also* 8 J. Moore at ¶6.05.[4][a], at 6–119. The Rule 6(e) proscription is on the use of the grand jury material and not on who obtains it.

It should also be stressed, however, that the phrase "assist . . . in the perform-ance of such attorney's duty to enforce federal criminal law" can be construed to cover a wide range of matters, such as identifying possible violators of far-reaching anti-drug and anti-terrorism laws in the federal criminal code.

**Question 2.** Under the same circumstances described in 1., above, if the IC incidentally learns certain collateral information solely by reason of its access to the 6(e) material — for example, it is able to deduce the identity and location of a foreign terrorist from certain related information adduced before the grand jury, although that identity and location did not *themselves* surface before the grand jury — can the IC lawfully use that *derivative* information for purposes other than federal criminal law enforcement, such as foreign intelligence purposes?

**Response:** Our research has failed to identify published opinions or commentary addressing this issue. A reasonable argument can be made, however, that as long as the IC was lawfully using the 6(e) material to assist the Government attorneys, and learned the collateral information within the scope of its authorized support operations, the Rule does not require the IC to refrain from using derivative information that it learns incidentally in the course of providing such assistance. Specifically, Rule 6(e)(3)(B) restricts the use of "grand jury material," and nothing else.[15] In the circumstances posited, the IC personnel would not be unlaw-fully utilizing the *grand jury* material for ulterior purposes; rather, they would be lawfully using the *derivative* information (which does not constitute "matters occurring before the grand jury"). We would caution, however, that the use of derivative information might violate the grand jury secrecy rules if such use would foreseeably result in the unauthorized disclosure of information that *does* con-stitute "matters occurring before the grand jury" — i.e., information that would reveal or compromise the secret deliberations of the grand jury itself, *see Anaya v. United States*, 815 F.2d 1373, 1379–80 (10th Cir. 1987). We would further caution that we cannot say with confidence that a court would approve the deriva-

---

[15] In contrast, statutory restrictions on the use of intercepted wire and oral communications extend not only to the contents of such communications, but also to "evidence derived therefrom." 18 U S C. §§ 2515, 2517 (1994)

tive use of Rule 6(e) material. Nor can we presume that, without prior court approval, a government attorney might not risk sanctions in permitting such derivative use.

**Question 3.** When 6(e) material is lawfully disclosed to the IC pursuant to Rule 6(e)(3)(A)(ii) for assistance purposes, what is the breadth of the federal criminal law enforcement purposes for which the IC may use such information? For example, if the "attorney for the government" to whom the assistance is to be provided is the Attorney General, may the assistance provided by the IC extend to the full range of the Attorney General's federal criminal law enforcement authorities? [16]

**Response:** Applying the plain language of Rule 6(e)(3)(A)(ii), the scope of authorized assistance is determined by (1) the scope of the requesting attorney's "duty to enforce federal criminal law" and (2) the scope of the attorney's request for assistance. If government personnel are rendering assistance to the Attorney General under the (A)(ii) provision, for example, their assistance may extend to a broad criminal law enforcement program for which the Attorney General is responsible-or to a single case or investigation, depending upon the scope of her request for assistance.[17] This is consistent with our prior opinion on permissible disclosure of grand jury matters *by* the Attorney General, where we opined that the Attorney General could disclose 6(e) material to members of the National Security Council in order to obtain their assistance in carrying out her criminal law enforcement responsibilities. *See* 1993 Opinion, 17 Op. O.L.C. at 61–64.. We noted the legislative history underlying the Rule 6(e)(3)(A)(ii) exception, which demonstrates that Congress intended federal prosecutors to have leeway "to make such disclosures of grand jury information to other government personnel as they deem necessary to facilitate the performance of *their duties relating to criminal law enforcement.*" S. Rep. No. 95–354, at 8 (1977), *reprinted in,* 1977 U.S.C.C.A.N. 527, 531 (emphasis added). However, personnel providing assistance to government attorneys under subparagraph (A)(ii) cannot assume a broad mandate for their activities merely because the requesting attorney has broad responsibilities (e.g., a U.S. Attorney or an Assistant Attorney General). The scope of assistance must be confined to the area of enforcement specified by the requesting attorney.

To the extent that 6(e) material may be disclosed to IC personnel under the (A)(ii) exception, it must be noted that a list naming all the officials to whom such disclosures are made must be submitted to the district court that empaneled the grand jury. *See* Fed. R. Crim. P. 6(e)(3)(B).

---

[16] For purposes of the Federal Rules of Criminal Procedure, including Rule 6(e), the term "attorney for the government" includes the Attorney General, an authorized assistant of the Attorney General, a U.S Attorney, and an authorized assistant of a U.S Attorney Fed R Crim P 54(c), *see United States v Bates,* 627 F.2d 349, 351 (D.C Cir 1980).

[17] *See generally In re Federal Grand Jury Witness,* 597 F 2d 1166, 1168 (9th Cir 1979) (Hufstedler, J., concurring specially) ("if the government attorney's duties include the cooperative exchange of information with foreign officials to stop international drug trafficking, Rule 6(e) may permit disclosure")

**Question 4.** May 6(e) material be disclosed to IC officers where the information in question is urgently relevant to a matter of grave consequences for national security or foreign relations (e.g., information revealing that certain dual technology exports under investigation by the Grand Jury are to be used for the bombing of a major government building in a foreign state closely allied to the United States), even though the purpose of the disclosure does not fall within the coverage of Rule 6(e)'s listed exceptions to grand jury secrecy?

**Response:** Where approved by the President, we believe such disclosure would be lawful, although we caution that the legal principles supporting this conclusion are not firmly-established in the case law concerning grand jury secrecy. Nonetheless, we believe such disclosure would rest upon the same fundamental constitutional principle that has been held to justify government action overriding individual rights or interests in other contexts where the action is necessary to prevent serious damage to the national security or foreign policy of the United States. *See generally Haig v. Agee*, 453 U.S. 280, 309 (1981) (invoking the principle that the Constitution's guarantees of individual rights do not make it a "suicide pact"); *American Communications Ass'n, C.I.O. v. Douds*, 339 U.S. 382, 408 (1950) (to the same effect). Indeed, the justification for disclosure in this context would appear even stronger, inasmuch as the restrictions against disclosure are based upon the Federal Rules of Criminal Procedure rather than individual rights grounded in the Constitution.

In our 1993 opinion concerning disclosure of Rule 6(e) material to the President and members of the National Security Council, we recognized the general principle that, under certain compelling circumstances, the President's responsibilities under Article II of the Constitution can provide justification for disclosures of grand jury information that would not be authorized by the provisions of Rule 6(e) itself. *See* 1993 Opinion, 17 Op. O.L.C. at 65–69. Here, the application of that principle occurs in the context of the President's responsibilities under Article II for national defense and foreign affairs. The question is whether Rule 6(e) should be construed to limit the access of the President and his aides to information critical to the national security — information that, in the absence of Rule 6(e), unquestionably would be provided.

The information in question would be crucial to the discharge of one of the President's core constitutional responsibilities. The Constitution vests the President with responsibility over all matters within the executive branch that bear on national defense and foreign affairs, including the collection and dissemination of national security information.[18] Because "[i]t is 'obvious and unarguable' that

---

[18] *See Department of the Navy v Egan*, 484 U.S 518, 527 (1988) ("The President, after all, is the 'Commander in Chief of the Army and Navy of the United States.' U S Const , Art. II, § 2 His authority to    control access to information bearing on national security .    flows primarily from this constitutional investment of power  , and exists quite apart from any explicit congressional grant    . The authority to protect such information falls on the President as head of the Executive Branch and Commander in Chief."), *New York Times Co v United States*, 403 U S. 713, 728–30 (1971) (Stewart, J., concurring) ("If the Constitution gives the Executive a large degree of unshared power in the conduct of foreign affairs and the maintenance of our national defense, then under

no governmental interest is more compelling than the security of the Nation," *Haig*, 453 U.S. at 307 (quoting *Aptheker v. Secretary of State*, 378 U.S. 500, 509 (1964)), the President has a powerful claim, under the Constitution, to receive the information in question here and to authorize its disclosure to the IC. *See United States v. United States District Court*, 407 U.S. 297, 310 (1972) (President "has the fundamental duty under Art. II, § 1, of the Constitution, to 'preserve, protect and defend the Constitution of the United States.' ").

On the other side of the balance is a rule whose words do not specifically address the President's powers in the field of foreign affairs and national security, and whose purpose is not affected by the disclosure at issue. The rule of grand jury secrecy advances "several distinct interests":

> First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution. as well as to inducements. There would also be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218–19 (1979) (footnotes and citations omitted). Although routine disclosure even within the government may implicate these interests, *see United States v. Sells Engineering, Inc.*, 463 U.S. 418, 431–32 (1983), and the Court accordingly has held that Rule 6(e) does not permit disclosing grand jury materials to Civil Division lawyers for use in pursuing civil suits, *id.*, here (in addition to the "crucial need" for the information not present in *Sells*) the extraordinary nature of the circumstances leading to disclosure would remove the threat to the grand jury's integrity. That grand jury materials may be revealed to the IC under exceptional and exigent circumstances would not appreciably reduce the willingness of witnesses to come forward and would pose little danger that the government could use grand jury powers to pursue non-criminal matters or overcome the otherwise applicable limits on national security investigations. *Id.*

Disclosure in these circumstances would not conflict with the place of grand juries in the constitutional structure of government or with the constitutional rights

---

the Constitution the Executive must have the largely unshared duty to determine and preserve the degree of internal security necessary to exercise that power successfully [I]t is the constitutional duty of the Executive — as a matter of sovereign prerogative and not as a matter of law as the courts know law — . to protect the confidentiality necessary to carry out its responsibilities in the field of international relations and national defense ").

of individuals. *Cf. United States v. United States District Court,* 407 U.S. at 316–17 (President, acting through Attorney General, lacked power to authorize electronic surveillance in domestic security matters without prior judicial warrant).[19] Where the President's powers to protect national security are in tension with a statutory rather than a constitutional rule, the statute cannot displace the President's constitutional authority and should be read to be "subject to an implied exception in deference to such presidential powers." *Rainbow Navigation, Inc. v. Department of the Navy,* 783 F.2d 1072, 1078 (D.C. Cir. 1986) (Scalia, J.).[20] There, the court stated, albeit in a discussion not central to its holding, that it doubted that "a [Presidential] decision that the Navy should use a foreign ship, faster or less vulnerable than any American ship available, to deliver urgently needed supplies to troops in wartime" would be prohibited by a statute that, on its face, required the United States to prefer domestic shippers if they were available. *Id.* We think Rule 6(e) should be read to be subject to such an implied exception.

Thus, we believe there are circumstances where grand jury information learned by an attorney for the government may be of such importance to national security or foreign affairs concerns that to withhold it from the President (or his Cabinet members and other key delegatees and agents, acting on his behalf) would impair his ability to discharge his executive responsibilities under Article II of the Constitution. We believe the hypothetical scenario posited in the above question — i.e., grand jury proceedings reveal reliable evidence of a plot to bomb a major government building in a friendly foreign state — would clearly constitute such circumstances. In those circumstances, the attorney learning the information would be obliged to convey the information to appropriate superiors (e.g., the U.S. Attorney), who would report it to the Attorney General, who would in turn report it to the President. The President (or appropriate officials acting on his behalf, such as the Attorney General) would clearly be authorized to share such crucial information with his executive branch subordinates, including IC officials, to the extent necessary to discharge his constitutional responsibilities.

As we noted in our 1993 opinion, such "emergency" disclosure of 6(e) material would be necessitated and authorized by Article II of the Constitution, rather than permitted by Rule 6(e). *See* 1993 Opinion, 17 Op. O.L.C. at 65–69. Accordingly, in the limited and extraordinary kind of circumstances posited, we do not believe that prior judicial approval of such disclosure would be, or could be, constitu-

---

[19] We note, however, that if the exigency were extreme enough, even constitutional protections might yield to national security concerns *See Haig,* 453 U S at 308 ("'[n]o one would question but that a government might prevent actual obstruction to its recruiting service or the publication of the sailing dates of transports or the number and location of troops ' ") (quoting *Near v Minnesota ex rel Olson,* 283 U S 697, 716 (1931))

[20] *See also United States v Truong Dinh Hung,* 629 F 2d 908, 914 (4th Cir 1980) (foreign intelligence exception to Fourth Amendment warrant requirement, in view of "the need of the executive branch for flexibility, its practical experience, and its constitutional competence" for foreign affairs), *cert denied,* 454 U S 1144 (1982), *United States v. Butenko,* 494 F 2d 593, 608 (3d Cir ) (en banc), *cert. denied,* 419 U.S 881 (1974) (interpreting statute and Fourth Amendment in light of President's constitutional authority)

tionally required. Moreover, in the scenario presented, we think self-initiated disclosure would also be authorized under Rule 6(e)(3)(A)(ii) if the plot involved any violations of U.S. criminal law (i.e., the disclosure would be in furtherance of the disclosing attorney's duty to enforce federal criminal law). To the extent, however, that the disclosure involved no violation of U.S. law and thus falls outside the scope of Rule 6(e)'s recognized exceptions, and to the extent that the exigencies of the situation would render it appropriate and prudent to request judicial approval, there is precedent for court-ordered disclosure outside the parameters of Rule 6(e).

Specifically, a number of court decisions have recognized that, under truly exceptional or compelling circumstances, a federal court may order or permit disclosure of confidential grand jury information on grounds other than those authorized by Rule 6(e). These cases include *In re Petition to Inspect and Copy Grand Jury Materials*, 735 F.2d 1261 (11th Cir.) (disclosure in aid of judicial misconduct investigation and possible impeachment), *cert. denied*, 469 U.S. 884 (1984); *In re Biaggi*, 478 F.2d 489 (2d Cir. 1973); *In re Craig*, 942 F. Supp. 881 (S.D.N.Y. 1996) (recognizing permissibility of extra-Rule 6(e) disclosure under "exceptional circumstances," but holding that it was not justified merely to assist a scholar with his dissertation), *aff'd* 131 F.3d 99 (2d Cir. 1997); *In re Petition of May*, No. M 11–189 (S.D.N.Y. Jan. 20, 1987), *withdrawn* 651 F. Supp. 457 (S.D.N.Y. 1987) (granting scholar's request to disclose grand jury testimony of public official accused of being a Communist spy); *In re Report and Recommendation of June 5, 1972, Grand Jury*, 370 F. Supp. 1219, 1228–30 (D.D.C. 1974) (Sirica, C.J.) ("Rule 6(e), which was not intended to create new law, remains subject to the law or traditional policies that gave it birth"; disclosure of 6(e) material permitted in form of a grand jury report to the House Judiciary Committee in connection with Watergate investigation); *see also Atlantic City Elec. Co. v. A.B. Chance Co.*, 313 F.2d 431, 434 (2d Cir. 1963) ("a court may order the disclosure of grand jury minutes when there is a showing of special and compelling circumstances sufficient to overcome the policy against disclosure"; no reference to Rule 6(e) as source of such judicial authority).

Again, in light of the extraordinary nature of this authority to disclose Rule 6(e) material, and to ensure careful consideration of the constitutional basis for any disclosure made outside the provisions of Rule 6(e), we recommend the adoption of procedures requiring consultation with, and approval by, the appropriate officials (e.g., the Attorney General or the Deputy Attorney General) preceding any such disclosure.

RICHARD L. SHIFFRIN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*